**STATE of North Dakota, Plaintiff and Appellee,**

v.

**James P. FLOHR, Sr., Defendant and Appellant.**

**Cr. No. 732.**

Supreme Court of North Dakota.

Dec. 19, 1980.

Rehearing Denied Jan. 8, 1981.

James M. Vukelic, State's Atty., Mott, for plaintiff and appellee.

Greenwood, Greenwood & Greenwood, Dickinson, for defendant and appellant; argued by Diane Melbye, Dickinson.

PEDERSON, Justice.

James P. Flohr, Sr., was convicted for delivery of an alcoholic beverage to a mi-

nor, § 5–01–09, NDCC. We reverse and remand for retrial.

The case was tried to a six-person jury in the Stark County Court With Increased Jurisdiction. Flohr now seeks a new trial for the following reasons:

(1) That amendment of Rule 12.1 of the North Dakota Rules of Criminal Procedure was in this case ex post facto in violation of Article I, Section 10, of the Federal Constitution;

(2) That he was denied his due process right to present defense evidence; and

(3) That the court was "manifestly unjust" in its refusal to allow, for the record, an offer of proof regarding evidence sought to be introduced at trial.

I.

On October 13, 1978, Melvin Raab, 20 years old at the time, entered Cap's Liquor Store in Dickinson, North Dakota, and purchased two pints of vodka. At trial in June 1980, Raab testified that the person from whom he purchased the vodka was the defendant, James Flohr. When the State rested, Flohr attempted to introduce evidence showing he was not at Cap's Liquor Store on the evening of October 13, and that he was in Billings County with his brother. The State objected that Rule 12.1, NDRCrimP, required the defendant to notify the prosecution of intent to establish an alibi defense, and that, because Flohr had not given notice, he was precluded from offering alibi evidence beyond his own testimony. The court sustained the objection.

Flohr believes that the continual postponement of proceedings—over a year-and-a-half between the purchase by Raab and the trial—significantly affects the equities of this case. Until January 1, 1980, a criminal defendant in North Dakota had no duty to inform the prosecuting attorney of a possible alibi defense unless the latter served a written demand.[1] However, Rule

1. "RULE 12.1—NOTICE OF ALIBI
    "(a) Demand by prosecuting attorney—Notice by defendant. Upon written demand of the

prosecuting attorney stating the time, date, and place at which the alleged offense was committed, a defendant who intends to offer evidence

12.1(a) now requires a defendant to notify the prosecution of an alibi defense whether or not a request has been made.[2] Thus, when the offense allegedly was committed and for over a year following, Flohr had no obligation to give notice of an alibi, but by the time the matter came to trial the rule had changed. Apparently presuming the old rule would govern at trial, Flohr did not notify the prosecution of his defense and was subsequently prevented from offering it.

The long delay resulted from difficulty in finding an attorney to prosecute the case. The court set trial originally for April 12, 1979, and a pretrial conference was scheduled and conducted on February 28, 1979. However, about two weeks before the trial was to begin, counsel for Flohr moved the court to disqualify the Stark County state's attorney because of a possible conflict of interest. The court granted the motion on April 5, 1979, and on April 25, 1979, appointed another attorney, Thomas Tuntland, to be "special prosecutor with the powers of the state's attorney" for the purpose of continuing the action against Flohr. On July 9, 1979, Tuntland, of his own motion, withdrew as prosecuting attorney before trial was held. Though both of these prosecutors were active in the case, neither requested notice of alibi pursuant to the prior rule. The current prosecutor, James Vukelic, was not appointed until March 10, 1980, by which time the amended rule was in effect.

of an alibi defense, within the time provided for the making of pretrial motions or at any time thereafter as the court directs, shall inform the prosecuting attorney of that intention and file such notice. The notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish the alibi.

"(b) Notice by the prosecuting attorney. Within such time, after receiving notice by the defendant, as the court directs, the prosecuting attorney shall inform the defendant of the names and addresses of those upon whom the prosecution intends to rely to establish defendant's presence at the scene of the alleged offense and shall file such notice.

"(c) Failure to comply. Upon failure of either party to comply with the requirements of this rule, the court shall exclude the testimony of any witness offered by that party as to the defendant's absence from, or presence at, the scene of the alleged offense. This rule does not limit the right of the defendant to testify in his own behalf.

"(d) Continuing duty to disclose. Both the defendant and the prosecution are under a continuing duty to promptly disclose the names and addresses of additional witnesses which come to the attention of either party subsequent to their having given notice pursuant to the requirements of this rule.

"(e) Exceptions. For good cause shown, the court may grant an exception to any of the requirements of this rule."

**2.** "RULE 12.1. Notice of Alibi.

"(a) Notice of Defendant. A defendant who intends to offer evidence of an alibi defense, within the time provided for the making of pretrial motions or at any time thereafter as the court directs, shall serve written notice upon the prosecuting attorney of that intention and file such notice. The notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish the alibi.

"(b) Notice by the Prosecuting Attorney. Within ten days thereafter, but in no event less than ten days before trial, unless the court directs otherwise, the prosecuting attorney shall serve upon the defendant or his attorney a written notice stating the names and addresses of those upon whom the prosecution intends to rely to establish defendant's presence at the scene of the alleged offense and shall file such notice.

"(c) Failure to Comply. Upon failure of either party to comply with the requirements of this Rule the court may exclude the testimony of any witness offered by that party as to the defendant's absence from, or presence at, the scene of the alleged offense. This Rule does not limit the right of the defendant to testify in his own behalf.

"(d) Continuing Duty to Disclose. Both the defendant and the prosecution are under a continuing duty to promptly disclose the names and addresses of additional witnesses which come to the attention of either party subsequent to their having been given notice pursuant to the requirements of this Rule.

"(e) Exceptions. For good cause shown, the court may grant an exception to any of the requirements of this Rule.

"(f) Inadmissibility of Withdrawn Alibi. Evidence of an intention to rely upon an alibi defense later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention."

## II.

Flohr contends the revision of Rule 12.1 violates the constitutional prohibition of ex post facto laws. In his brief, Flohr cites a well-known and often-quoted passage defining an ex post facto law:

"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender." *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798).

We accept this formal statement, but reject Flohr's conclusion that the amendment of Rule 12.1 falls within any one of its categories. The new form of Rule 12.1 does not "criminalize" any acts not criminal before January 1, 1980, nor does it increase the penalty for any criminal act. It effects no revision in the rules of evidence which lessens the burden of proof on the prosecution. Thus we are presented with none of the standard indicia of an ex post facto law.

In *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the Supreme Court declared that "even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." The ban against laws ex post facto "was intended to secure *substantial personal rights* against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." [Emphasis added.] *Dobbert, supra*, 97 S.Ct. at 2298, quoting *Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925).

Any rule of procedure can have substantive consequences. Thus determining whether a procedural change violates the ex post facto clause is necessarily an ad hoc process of line drawing. *Beazell, supra*, 46 S.Ct. at 69. Certainly, Rule 12.1 is procedural. It is found in a compilation entitled "North Dakota Rules of Criminal Procedure." Its purpose is to provide an orderly means by which evidence of alibi is adduced at trial. Further, we do not believe its modification represents an arbitrary and oppressive encroachment upon a defendant's substantial personal rights. The exclusionary sanction is not new—it was not created by the amended rule. The change in the rule's provision for penalty *benefits* defendant by ending the mandatory exclusion of alibi testimony. That the defendant must now initiate the discovery process is no basis for an ex post facto argument. Such a change contrasts with those appearing in cases like *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), and *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), where the prejudicial effects of the new laws were both new and beyond the control of the defendants. Here, Flohr's failure to give notice, not the independent working of the rule, was the direct cause of the evidence being barred. We conclude that the amendment of Rule 12.1 is procedural in the sense that it will not ground a challenge based on the ex post facto clause.

## III.

The rule provides discovery rights to the defendant as well as the prosecution. Notice by the defendant actuates a similar duty of the prosecution to provide names of rebuttal witnesses. And the threat of exclusion of alibi evidence as a penalty for noncompliance is balanced against the inadmissibility of an alibi notice if the defendant later decides not to use the defense. The United States Supreme Court in *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), held that a notice-of-alibi rule comports with due process if it grants the defendant reciprocal rights. Rule 12.1 puts the defendant at no disadvantage which the prosecution escapes, and

cannot be overturned on these due process grounds.

■ Flohr challenges the exclusionary sanction of subsection (c) of the Rule as a violation of the Sixth Amendment compulsory process clause. Compulsory process— "in plain terms the right to present a defense"—is an element of due process guaranteed a state criminal defendant. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). Whether the power given by the rule to exclude evidence of alibi violates the defendant's right to make his case is an issue which was expressly left unresolved in *Wardius, supra,* 93 S.Ct. at 2211, note 4, and in its predecessor, *Williams v. Florida*, 399 U.S. 78, 83, 90 S.Ct. 1893, 1897, note 14, 26 L.Ed.2d 446 (1970). Thus we lack authoritative precedent to guide our review.

Case law we have found on the subject would support a holding that the sanction is constitutional. E. g., *Hartman v. State*, 376 N.E.2d 100 (Ind.1978); *People v. Jackson*, 71 Mich.App. 395, 249 N.W.2d 132 (1976); *State v. Smith*, 88 N.M. 541, 543 P.2d 834 (1975); *Bush v. State*, 203 Kan. 494, 454 P.2d 429 (1969); *State v. Dodd*, 101 Ariz. 234, 418 P.2d 571 (1966); *Rider v. Crouse*, 357 F.2d 317 (10th Cir. 1966); see also, *United States v. Smith*, 524 F.2d 1288 (D.C. Cir. 1975). In fact, we know of no precedent which has held unconstitutional the exclusion of alibi testimony for noncompliance with a notice rule.

A defendant's right to present evidence on his own behalf, while fundamental, is not unaffected by other considerations. It is not a right to confound otherwise reasonable rules of procedure aimed at ascertaining the truth and accomplishing justice. *United States v. Nobles*, 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975); *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Recognizing that there are "legitimate demands of the adversarial system," *Nobles, supra,* which can properly influence the expression of the Sixth Amendment right, we must determine whether the exclusion of alibi evidence is justifiable.

We note initially that the Supreme Court has declared its approval of increased pretrial discovery in criminal cases, specifically in the form of notice of alibi rules. The court termed "the growth of such discovery devices ... a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system." *Wardius, supra,* 93 S.Ct. at 2211. In *Williams, supra,* 90 S.Ct. at 1896, the court stated its rationale more extensively:

"Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh hour defense is both obvious and legitimate. Reflecting this interest, notice of alibi provisions, dating at least from 1927, are now in existence in a substantial number of states. The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as 'due process' is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence."

One commentator has specified a number of reasons for a notice rule. Included are the following:

"1—Foremost is the idea that the statute prevents surprise. Alibi has been termed a 'hip-pocket' defense because of the ease with which it can be manufactured for introduction in the final hours of trial.

"2—The statute acts to deter false alibis because defendants know that the information furnished will be investigated before trial.

"3—Pretrial investigation results in a saving of money and trial time. This occurs in two ways. (1) If, after the investigation, the district attorney is satisfied that the alibi is true, the case should be dismissed; (2) the district attor-

ney is not surprised at trial by the alibi defense, and there is no need for a continuance to investigate and prepare. The pretrial investigation may indicate that the alibi probably is false and/or that defendant's witnesses are not credible. The district attorney can prepare his case accordingly.

"4—Alibis which are presented at trial will be accorded more respect. Alibi, because of the ease with which it can be manufactured, is treated by some jurisdictions as a 'second-class' affirmative defense, and when an alibi is in issue and the jury is charged, the judge is allowed to disparage the defense.[3]

"5—Finally, as previously developed, this rule is important in the context of more liberal discovery in criminal cases." Epstein, Advance Notice of Alibi, 55 JCrimL, C and PS, 29, 31–32 (1964). See also, Chief Justice Burger's concurrence in *Williams, supra,* 90 S.Ct. at 1908.

■ Excluding evidence can be an appropriate means for dealing with a recalcitrant defendant. An absolute bar to defendant's evidence is of course unacceptable, but selective use of the sanction does not necessarily offend the standard of fairness which the Sixth Amendment requires above all. *Nobles, supra,* 95 S.Ct. at 2171. Rule 12.1 certainly does not represent an unconditional restriction on a defendant's ability to make out his case. The defendant is forbidden nothing, but is required only to proceed in a certain manner. The rule upholds in all cases an opportunity of the defendant himself to give alibi testimony. Subsection (c) does not make exclusion of other evidence mandatory, and subsection (e) further indicates the discretionary nature of the court's power to fashion appropriate remedies. The rule, then, seeks not to short-change a defendant of his rights but to insure, by means within the court's discretion, that presentation of evidence at trial will be fair and reliable. That a court may, under certain circumstances, disallow defense evidence is not, per se, a violation of the Sixth Amendment.

We believe the policy of liberal discovery embodied in part in Rule 12.1 justifies, in some cases, enforcement by precluding a defendant from introducing alibi evidence. Without the threat and use of the sanction, the policies of the rule would likely go unfulfilled. Wright, Federal Practice and Procedure, 1979 Supp., § 203, at 191. Quite simply, a defendant with an absolute right to submit evidence withheld from discovery has little to lose by being uncooperative. Alternative sanctions appear less effective and often entail delay and expense, curtailment of discovery, and even potential constitutional problems. Epstein, *Advance Notice of Alibi, supra,* at 35–36; Note, *The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense,* 81 Yale L.J. 1342, 1356 (1972).

■ We conclude that a ruling which, pursuant to Rule 12.1, prevents admission of alibi evidence is reviewable only to the extent of determining whether the lower court has abused its discretion. When an issue arises as to admitting unrevealed alibi evidence, a court ought to take into account, among other particulars of the case, the actual prejudice that will redound to the prosecution if the testimony is allowed and whether the defendant's failure to inform was in good faith and for good cause. A court could well find fairness, under Rule 2, NDRCrimP, more adequately served in the period immediately following a procedural rule change, by the grant of a continuance to permit the State to meet the issue. *State ex rel. Jorgenson v. Dist. Court, Etc.,* 289 N.W.2d 211, 215 (N.D.1980).

■ The trial court did not abuse its discretion in ruling inadmissible Flohr's alibi evidence. The State first learned of the evidence at trial after it had completed its case. This is exactly the type of situation the rule was intended to prevent. Defense counsel's professional responsibility is to be aware of new law directly affecting his client's case. Assuming counsel's aware-

---

**3.** This rationale may have little relevance in North Dakota. See *State v. Nelson,* 17 N.D. 13, 114 N.W. 478 (1908); *State v. Gates,* 51 N.D. 695, 200 N.W. 778 (1924).

ness of the new rule, his further duty is to ascertain, if there is any question, which rule will govern at trial. Unawareness or uncertainty does not lessen the prejudicial surprise and does not amount to good cause. We decline, therefore, to say that the trial court abused its discretion.

### IV.

■ Flohr objected to the trial court's handling of an offer of proof made near the end of trial. The court refused even the offer itself, and thus the record fails to reflect the sufficiency or purpose of the offer, the substance of the proof, and the reasons for denial. Whether or not the trial court suspects the proof to be offered is ultimately inadmissible, a record preserving the offer and the ruling is necessary if an appellate court is to carry out its reviewing function. See Rule 103(a)(2) and (b), NDREv. This court is not the proper forum for original determination as to the admissibility of testimony. See, *United States v. James*, 510 F.2d 546, 551 (5th Cir. 1975). We hold that the trial court erred in its refusal to hear the offer. *Jones v. State*, 306 So.2d 57, 58 (Miss.1975); *State v. Cokeley*, 226 S.E.2d 40, 45 (W.Va.1976). We cannot be sure of the nature of the evidence Flohr sought to put on the record, and we will not speculate. See, generally 75 Am. Jur.2d Trial, § 128; 23 C.J.S. Criminal Law § 1029; and 89 A.L.R.2d 279.

■ Although it was not made clear in Flohr's brief and oral argument, the record shows that some of the excluded testimony was not alibi testimony. To constitute an alibi, it must appear that the accused was at some other specified place at the time of the commission of the crime, and it is not an alibi to establish merely that accused was not at the scene of the crime. See, generally, 22 C.J.S. Criminal Law § 40, and 21 Am.Jur.2d Criminal Law, § 136. Flohr's counsel first argued to the trial court that the defense was not "alibi," and, second, that if it were "alibi," the amended Rule 12.1 should not be applied. If the offer of

proof had related to witnesses who would testify that Flohr was at another specific place when the crime was committed, the evidence would not have been admissible under the circumstances of this case and the refusal to permit Flohr to make his offer of proof in the record would have been proper. On the other hand, if the offer of proof related to witnesses who would testify only that Flohr was not at the scene of the crime, it would be admissible evidence and Flohr should have been allowed to place that offer of proof in the record.

There was a motion for new trial made in this case after the appeal had been taken, primarily upon the same grounds asserted on this appeal.[4] The motion was denied. Again, there was no clear distinction made between witnesses who would testify that Flohr was at some specified other place when the crime was committed, and witnesses who would testify that Flohr was not present at Cap's Liquor Store on the evening in question.

Under the circumstances, the conviction is reversed and the case is remanded for retrial.

ERICKSTAD, C. J., and SAND, J., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the result reached by the majority opinion but I do so because of the peculiar facts of this case. If the only question before us involved the effect of the amendment to Rule 12.1, N.D.R.Crim.P., I might well affirm the conviction because I agree that a mere change in the rule would neither require nor justify a new trial. However, in this instance the change in Rule 12.1, concerning the notice of an alibi defense, was accompanied by a rather unique situation involving delays due to several changes in prosecutors. It is not unreasonable to assume that if the State were interested in learning of an alibi de-

---

4. No issue was raised as to the trial court's jurisdiction to entertain such a motion after the appeal had been taken. *City of Grand Forks v. Henderson*, 297 N.W.2d 450, 453 (N.D.1980).

fense it would have made inquiry under the old rule when trial was set in 1979. The State did not do so. Subsequent to January 1, 1980, I readily concede there was nothing preventing defense counsel from giving the notice prescribed by the rule as amended. In retrospect it is easy to say defense counsel should have done so. But, because of the several changes in prosecutors, the delays resulting therefrom and the amendment to Rule 12.1 during that time, Flohr should have been given the opportunity to introduce his alibi testimony at trial despite the fact no demand had been made by the State nor notice of intent to rely upon an alibi defense had been given by the defense counsel. If admission of such testimony at that late date were deemed prejudicial to the State, a continuance should have been granted to permit the State to prepare for that defense. Rule 33, N.D.R.Crim.P., authorizes this court to grant a new trial "if required in the interests of justice." I believe the peculiar facts of this case do require a new trial.

PAULSON, J., concurs.